IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| _____ X | |
| CAROLINE ALANA LEWIS-GURSKY and RUBEN CHEZ, : : : | |
| : | Case No: 8:15-cv-02887 |
| Plaintiffs, : : | |
| v. : : | |
| CITIGROUP, INC. and JUDGE TECHNICAL SERVICES, INC., : : : | |
| Defendants. : : | |
| _____ X | |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR
COURT-AUTHORIZED NOTIFICATION PURSUANT TO 29 U.S.C. § 216(b)**


**MORGAN, LEWIS & BOCKIUS LLP**

Carol A. Field
5300 Southeast Financial Center
200 S. Biscayne Blvd.
Miami, FL  33131-2339

-and-

Sam S. Shaulson (*pro hac vice*)
101 Park Avenue
New York, NY  10178

-and-

Michael J. Puma (*pro hac vice*)
1701 Market Street
Philadelphia, PA  19103

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     RELEVANT PROCEDURAL BACKGROUND ..................................................4

III.    RELEVANT FACTUAL BACKGROUND ..........................................................6

   A.   Plaintiffs and Others in the Putative Collective Had Different Experiences
        Regarding How They Billed Their Time to Citi. ..........................................6

   B.   Plaintiffs and Others in the Putative Collective Had Different Experiences
        Regarding How They Were Paid By Each Vendor. .......................................8

   C.   Plaintiffs and Others in the Putative Collective Performed Different Jobs That
        Require an Individualized Assessment of Their Exempt Duties. .................10

   D.   Plaintiffs And Others in Putative Collective Had Different Experiences
        Regarding Whether or Not They Actually Worked Over 40 Hours A Week. ..........11

   E.   Plaintiffs and Others in the Putative Collective Had Different Experiences
        With Respect To Plaintiffs' Theory Of Joint Employment. .......................11

IV.     ARGUMENT ......................................................................................................12

   A.   This Court Has Rejected Plaintiffs' Rubber-Stamp Approach in Favor of a
        Meaningful Conditional Certification Standard That Promotes Judicial
        Efficiency. ...................................................................................................12

        1.  The Purpose of the FLSA's Certification Procedure is Judicial
            Efficiency. ............................................................................................12

        2.  Because The Parties Conducted Extensive Discovery Regarding
            Conditional Certification, Plaintiffs Must Meet a Higher Burden. ..............13

        3.  Even When a More "Lenient" Standard Applies, Courts Properly
            Address the Factual and Legal Issues Presented by Plaintiffs' Claims .........16

   B.   Conditional Certification Should Be Denied Because Plaintiffs Cannot Show
        Persons in the Putative Collective Are Similarly Situated.   ...................16

        1.  There is No Common, Unlawful Policy. ...............................................16

        2.  Plaintiffs Have Failed to Show They Are Similarly Situated to Those
            They Seek to Represent. ......................................................................20

            a.  Plaintiffs and Others in the Putative Collective Are Not
                Similarly Situated Regarding How They Billed Their Time to
                Citi. ..............................................................................................22

            b.  Plaintiffs and Others in the Putative Collective Are Not
                Similarly Situated Regarding How They Were Paid by
                Different Vendors. ......................................................................23

# TABLE OF CONTENTS
### (continued)

**Page**

c.     Plaintiffs and Others in the Putative Collective Are Not Similarly Situated Regarding Their Exempt Duties ..........................24

d.     Plaintiffs And Others in Putative Collective Are Not Similarly Situated Regarding Whether or Not They Even Worked Over 40 Hours/Week ...............................................................................25

e.     Plaintiffs And Others in Putative Collective Are Not Similarly Situated Regarding Plaintiffs' Theory of Joint Employment ............26

f.     Plaintiffs And Others in Putative Collective Are Not Similarly Situated Regarding Whether They Waived Their Right to Join This Action. ...................................................................................27

3.     Plaintiffs Have Failed to Show They Are Even Similarly Situated to Each Other. .....................................................................................27

C.     Plaintiffs Have Failed To Show That Others Desire To Join This Action ................29

D.     If the Court Grants Conditional Certification At All, Which It Should Not, It Should Limit Proper Notice To Only Certain Judge and SGA Employees. ............29

V.     CONCLUSION ....................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Babineau v. Fed. Exp. Corp.*,
    576 F.3d 1183 (11th Cir. 2009) ................................................................. 18

*Beecher v. Steak N Shake Operations, Inc.*,
    904 F. Supp. 2d 1289 (N.D. Ga. 2012) ...................................................... 18

*Bobbitt v. Broadband Interactive, Inc.*,
    No. 11-2855, 2012 WL 1898636 (M.D. Fla. May 23, 2012) ...................... 15

*Brooks v. A Rainaldi Plumbing, Inc.*,
    No. 06-631, 2006 WL 3544737 (M.D. Fla. Dec. 8, 2006) .................... 27, 28

*Chalker v. Burlington Coat Factory of Florida, LLC*,
    No. 12-2755, 2013 WL 5954783 (M.D. Fla. Nov. 7, 2013) ................. 13, 22

*Contini v. United Trophy Mfg., Inc.*,
    No. 06-432, 2007 WL 1696030 (M.D. Fla. June 12, 2007) ........................ 24

*Creely v. HCR ManorCare, Inc.*,
    789 F. Supp. 2d 819 (N.D. Ohio 2011) ...................................................... 15

*Crossley v. Armstrong Homes, Inc.*,
    No. 14-636, 2015 WL 2238347 (M.D. Fla. May 12, 2015) ........................ 26

*Czopek v. TBC Retail Group, Inc.*,
    No. 14-675, 2015 WL 4716230 (M.D. Fla. Aug. 7, 2015) ......................... 30

*Davis v. J.P. Morgan Chase & Co.*,
    587 F.3d 529 (2d Cir. 2009) ...................................................................... 19

*Demauro v. Limo, Inc.*,
    No. 10-413, 2011 WL 9191 (M.D. Fla. Jan. 3, 2011) ..................... 2, 16, 27

*Flores v. Lifeway Foods, Inc.*,
    289 F. Supp. 2d 1042 (N.D. Ill. 2003) ...................................................... 22

*Glatt v. Fox Searchlight Pictures, Inc.*,
    811 F.3d 528 (2d Cir. 2016) ...................................................................... 16

*Guzelgurgenli v. Prime Time Specials Inc.*,
    883 F. Supp. 2d 340 (E.D.N.Y. 2012) ....................................................... 30

*Hart v. JPMorgan Chase Bank, N.A.*,
    No. 12-00470, 2012 WL 6196035 (M.D. Fla. Dec. 12, 2012) ................................... 13, 16, 24, 27

*Hilley v. Tacala, L.L.C.*,
    No. 12-2691, 2014 WL 1246364 (N.D. Ala. Mar. 24, 2014) ......................................... 15, 18, 22

*Hipp v. Liberty Nat. Life Ins. Co.*,
    252 F.3d 1208 (11th Cir. 2001) ........................................................................................... 13, 14

*Hoffman-LaRoche Inc. v. Sperling*,
    493 U.S. 165 (1989) ..................................................................................................................... 13

*Ide v. Neighborhood Rest. Partners, LLC*,
    32 F. Supp. 3d 1285, 1291 (N.D. Ga. 2014) .............................................................................. 15

*Jackson v. Fed. Nat'l Mortg. Ass'n*,
    No. 15-01411, 2016 WL 3098077 (N.D. Ga. Mar. 29, 2016) ..................................................... 28

*Jancich v. Stonegate Mortg. Corp.*,
    No. 11-2602, 2012 WL 380287 (D. Kan. Feb. 6, 2012) ............................................................. 30

*Knispel v. Chrysler Grp. LLC*,
    No. 11-11886, 2012 WL 553722 (E.D. Mich. Feb. 21, 2012) .................................................... 30

*Korenblum v. Citigroup, Inc.*,
    No. 15-3383, 2016 WL 3945692 (S.D.N.Y. July 19, 2016) ................................................ passim

*Mehrkar v. Schulmann*,
    No. 99-10974, 2001 WL 79901 (S.D.N.Y. Jan. 30, 2001) .......................................................... 25

*Monserrate v. Hartford Fire Ins. Co.*,
    No. 14-149, 2015 WL 4068388 (M.D. Fla. July 2, 2015) ........................................................... 29

*Morgan v. Family Dollar Stores, Inc.*,
    551 F.3d 1233 (11th Cir. 2008) .................................................................................................... 13

*O'Jeda v. Viacom, Inc.*,
    No. 13-5658, 2014 WL 1344604 (S.D.N.Y. Apr. 4, 2014) ......................................................... 30

*Palacios v. Boehringer Ingelheim Pharm., Inc.*,
    No. 10-22398, 2011 WL 6794438 (S.D. Fla. Apr. 19, 2011) ..................................................... 25

*Pickering v. Lorillard Tobacco Co.*,
    No. 10-633, 2012 WL 314691 (M.D. Ala. Jan. 30, 2012) .......................................................... 14

*Pioch v. IBEX Eng'g Servs., Inc.*,
    825 F.3d 1264 (11th Cir. 2016) .................................................................................................... 25

-iv-

*Prince v. Cato Corp.*,
   No. 14-1708, 2015 WL 1040713 (N.D. Ala. Mar. 10, 2015)................................................22

*Robinson v. Dolgencorp, Inc.*,
   No. 06-122, 2006 WL 3360944 (M.D. Fla. Nov. 13, 2006) ........................................29

*Rodgers v. CVS Pharmacy, Inc.*,
   No. 05-77, 2006 WL 752831 (M.D. Fla. Mar. 23, 2006)..........................................29

*Sand v. Greenberg*,
   No. 08-7840, 2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) ........................................30

*Stuven v. Texas de Brazil (Tampa) Corp.*,
   No. 12-1283, 2013 WL 610651 (M.D. Fla. Feb. 19, 2013) ........................................19

*Thedford v. Drive In of Evansville, Inc.*,
   No. 14-0390, 2014 WL 5520954 (N.D. Ala. Oct. 31, 2014) ................................15, 24

*Thompson v. Speedway SuperAmerica LLC*,
   No. 08-1107, 2009 WL 130069 (D. Minn. Jan. 20, 2009)........................................22

*Udo v. Lincare, Inc.*,
   No. 13-1899, 2014 WL 5354589 (M.D. Fla. Sept. 17, 2014) ................................23, 27

*Walker v. Jefferson Cty. Bd. of Educ.*,
   No. 13-524, 2016 WL 1117643 (N.D. Ala. Mar. 22, 2016).....................................13, 14, 15, 25

*West v. Border Foods, Inc.*,
   No. 05-2525, 2006 WL 1892527 (D. Minn. July 10, 2006)........................................22

*West v. Verizon Commc'ns, Inc.*,
   No. 08-1325, 2009 WL 2957963 (M.D. Fla. Sept. 10, 2009) ................................16, 25

*Williams v. Accredited Home Lenders, Inc.*,
   No. 05-1681, 2006 WL 2085312 (N.D. Ga. July 25, 2006) ........................................25

*Young v. Cerner Corp.*,
   503 F. Supp. 2d 1226 (W.D. Mo. 2007)....................................................24

**STATUTES**

29 U.S.C. § 213(a)(1) ....................................................25

FLSA ............................................................passim

**OTHER AUTHORITIES**

29 C.F.R. § 541.200 *et seq.* ...........................................................................................................25

## I.      INTRODUCTION

Over 18 months ago, Plaintiffs filed this putative nationwide collective action on behalf of a sprawling group of "IT employees."  Plaintiffs claimed these individuals were all denied overtime in the same manner by Defendant Citigroup, Inc. ("Citi") despite working for over 40 third-party vendors at over 60 locations across the country.  Only one vendor, Judge Technical Services, Inc. ("Judge"), is a defendant.  Six months of discovery regarding conditional certification confirmed there is no similarly situated group of "IT employees."  Thus, Plaintiffs' motion for conditional certification (the "Motion" or "Pl. Mem."), *abandons the collective definition in the Amended Complaint* and requests notice to *a different/broader group*.  Plaintiffs fare no better with their new collective, which consists of over 700 workers (1) who were employed by over 40 vendors that (2) *billed* services to Citi on an hourly basis, and (3) who were designated under one of two Citi *billing* codes or as Anti-Money Laundering ("AML") Analysts.  Pl. Mem. 27.  The individualized experiences within this disjointed group differ substantially with respect to the numerous issues necessary to adjudicate Plaintiffs' purported "off-the-clock" claims under the Fair Labor Standards Act ("FLSA").  Plaintiffs' Motion should be denied for multiple, independent reasons.

First, the entire premise of Plaintiffs' action – that Citi uniformly prohibited vendor employees from *billing* more than 40 hours a week, and that this alleged "practice" resulted in over 40 vendors uniformly underpaying every member of the putative collective – was rejected only months ago in a nearly identical case brought by Plaintiffs' counsel against Citi.  *See Korenblum v. Citigroup, Inc.*, No. 15-3383, 2016 WL 3945692, at *4 (S.D.N.Y. July 19, 2016) (denying FLSA conditional certification after holding that Citi's billing arrangements

were not a common, unlawful policy under the FLSA because plaintiffs failed to show the arrangements resulted in dozens of vendors engaging in a coordinated scheme to underpay their employees).  Once again, there is zero evidence here of a uniform policy tying **billing** to **compensation**.  Indeed, Judge's compensation data shows regular payment of overtime to over a hundred workers, and multiple vendor employees confirm they reported all work hours and (like at least one Plaintiff) **received overtime pay** from various vendors.  Plaintiffs' inability to identify a common, unlawful policy is fatal to their Motion.

Second, even if mere billing practices were relevant (which they are not), Plaintiffs offer no evidence of a common practice of failing to bill hours worked over 40.  Plaintiffs' inconsistent experiences with just a few alleged "supervisors" are directly refuted by data showing **over 7,800 weeks** (the equivalent of over **150 years**), during the time period alleged in the Motion when vendor employees (including Plaintiffs) **billed more than 40 hours in a week to Citi**.  And Citi submits several declarations from vendors and their workers confirming that all hours worked were billed.  Plaintiffs offer no declarations at all.

Third, Plaintiffs have failed to show that they and the putative members of the collective are similarly situated **with respect to the facts that matter for determining liability**.  *See Demauro v. Limo, Inc.*, No. 10-413, 2011 WL 9191, at *2 n.3 (M.D. Fla. Jan. 3, 2011).  Plaintiffs allege in conclusory fashion that a "common scheme of underpayment" applies to all members of the putative collective "regardless of [vendor], location, or supervisor."  Pl. Mem. 1.  However, the only evidence the five Plaintiffs offer about any worker in the alleged collective is their own individualized testimony, which confirms that, even among the few locations where they worked, Plaintiffs had very different experiences

that varied from vendor-to-vendor and alleged "supervisor"-to-"supervisor" regarding the hours worked, the hours billed, and whether they were paid for hours worked over 40.

Plaintiffs' testimony and the testimony in the declarations submitted by Defendants establish that the individuals in the putative collective had vastly different experiences with respect to *each* of the issues the Court would need to determine for *every* member of the proposed collective: (1) whether Citi jointly employed the employee under the Eleventh Circuit's eight-factor test; (2) the employee's job duties and whether each met the computer professional or other overtime exemptions; (3) other individualized defenses available to Citi (including agreeing to binding arbitration); (4) alleged instructions, if any, received from different Citi personnel about billing; (5) alleged instructions, if any, received from one or more of 40 vendors about reporting hours for pay; (6) whether and during which weeks the employee's services were billed to Citi on an hourly basis; (7) how the employee was paid (salaried, hourly, etc.); (8) if, when, why, and how often the employee worked more than 40 hours in a week, and (9) whether the employee was paid overtime for those hours. These individualized inquiries render a collective action unmanageable and inefficient.

Fourth, Plaintiffs have no evidence that other individuals desire to join this action. Only four opt-in Plaintiffs (one of whom, Nicole Young, was part of the alleged collective for a matter of weeks if at all) have joined this purported action of over 700 despite the fact that: it has been pending for over 18 months; Plaintiffs' counsel has contacted nearly *100* members of the putative collective; and two Plaintiffs are currently assigned to Citi with regular access to more members. Conditional certification should be denied for this additional reason.

## II.     RELEVANT PROCEDURAL BACKGROUND

On April 23, 2015, Plaintiffs[1] filed this action alleging that Citi and Judge, and unidentified "staffing agencies like Judge," jointly employed "IT employees" who allegedly were not paid overtime.  *See* Dkt. 1 ¶¶ 35, 40.[2]   Judge, the only vendor defendant, employed the two named Plaintiffs, Alana Lewis-Gursky and Ruben Chez.[3]

Although Plaintiffs' counsel solicited at least 93 members of the putative collective,[4] there are only three opt-in Plaintiffs pursuing timely claims related to their employment by only two vendors:  David Rodriguez (Judge) and Jill Marlow (Judge, on the same small team as Lewis-Gursky); and Young (Software Guidance & Assistance ("SGA")).[5]  Young testified that for her current assignment at Citi she has been paid for all hours worked by her current employer, Fintech, Inc. ("Fintech").  Young Tr. 38:18-25.

On March 28, 2016, the Court ordered six months of discovery on "collective action certification issues."  Dkt. 94.  Defendants produced robust document discovery consisting of over 2,500 pages covering the topics Plaintiffs identified as necessary for conditional certification, including Fieldglass, a program used by Citi to bill third-party vendors for services provided by vendor employees, and ESI culled from over a million e-mails across all

---

[1] For ease of reference only, Defendants refer to the following five named and opt-in Plaintiffs as "Plaintiffs": Alana Lewis-Gursky, Ruben Chez, Jill Marlow, David Rodriguez, and Nicole Young.  Portions of Plaintiffs' deposition transcripts are attached as Exs. A-E to the Declaration of Justin K. Victor ("Victor Decl.") filed herewith.

[2] This definition remained unchanged in Plaintiffs' Amended Complaint filed on July 9, 2015. Dkt. 26, ¶ 57.

[3] Lewis-Gursky admits she was employed by Judge only during the pertinent period.  Lewis-Gursky Tr. 14:3-9.

[4] Victor Decl. Exs. I & J; Dkt. 154-1 (at Response 13).

[5] Marlow admits she was not employed by any other vendor during the pertinent period.  Marlow Tr. 56:1-18. Johnson, who worked on the same small team as Young, has settled her claims.  See Dkt. 116.  Young is not asserting claims against her current employer, Fintech, Inc.  Young Tr. 38:18-25.

document custodians requested by Plaintiffs.  Plaintiffs have deposed Citi's 30(b)(6) witness, Donna Gruppuso, on many topics and also three Citi managers who worked at the few Citi locations to which Plaintiffs were assigned.  *See* Dkt. 152 at 5-7.

***Plaintiffs repeatedly represented to the Court that individualized information (most of which is possessed by non-party vendors) is needed to determine whether they and members of the putative collective are similarly situated.***  *See, e.g.*, Dkt. 120 at 6 (demanding class contact information to "make the showing that is required by the Eleventh Circuit to permit collective action certification," including "how they were paid," "practices for recording their time," "where they work," and "which job titles they work under"), 13 (noting contracts between Citi and vendors are just "a starting point" for joint employment analysis); Dkt. 161 at 11 ("Plaintiffs seek to discover evidence from third-parties that will show how staffing agencies compensated Plaintiffs and other putative collective members.").

Although Plaintiffs alleged that they are similarly situated to each other and thousands of others because they worked as "IT employees," *see* Dkt. 26 ¶ 57, Plaintiffs never coherently defined that term.  *See* Dkt. 137 (quashing Plaintiffs' subpoenas to four non-party vendors after finding their "definition of 'IT employees'" was "unclear"). Plaintiffs' vastly different duties led them to define "IT employee" in very different ways, including one Plaintiff who testified she was not an "IT employee" and thus not even in the collective.  *See* Young Tr. 146:23-147:1 (Q: "[D]o you consider yourself to be an IT employee at Citi? A: No."); Lewis-Gursky Tr. 62:10-63:22; Chez Tr. 110:8-111:7; 112:20-113:8; Marlow Tr. 15:9-17:7; Rod. Tr. 107:20-108:1.

After forcing Defendants to spend hundreds of thousands of dollars litigating claims brought on behalf alleged "IT employees," Plaintiffs now abandon that collective.  Instead, Plaintiffs attempt to manufacture an even broader collective of vendor employees, regardless of whether or not they:  (1) worked as "IT employees" or in any of dozens of different positions with varying and often overtime-exempt duties; (2) worked more than 40 hours/week; (3) were paid for all hours over 40 in a week, including overtime; or (4) were paid (in contrast to billed) on an hourly basis (or another method like a fixed weekly salary).  Pl. Mem. at 4-5.  Their new sprawling collective is equally defective.

## III.    RELEVANT FACTUAL BACKGROUND

### A.    Plaintiffs and Others in the Putative Collective Had Different Experiences Regarding How They Billed Their Time to Citi.

While Plaintiffs claim without support that Citi uniformly prohibited members of the putative collective from billing over 40 hours, *those individuals billed over 40 hours/week in Fieldglass in over 15,000 weeks since April 2012* (the time period alleged in the Complaint) *and in over 7,800 weeks from November 2013 to March 1, 2016* (the time period alleged in the Motion).  Declaration of Donna Grupposo ("Grupposo Decl.") at ¶ 8.  Two of the five Plaintiffs, Lewis-Gursky and Young, admit to billing more than 40 hours in Fieldglass in multiple weeks.  Lewis-Gursky Tr. 208:1-209:24; 243:10-15 ; Young Tr. 38:6-21; 112:6-10.  Other Judge, SGA, and vendor putative collective members regularly billed more than 40 hours in Fieldglass. Decl. of Santosh Iyer ("Iyer Decl.") ¶ 7; Decl. of Ranjeet Sinha ("Sinha Decl.") ¶ 6; Decl. of Yadira Benetez ("Benetez Decl.") ¶ 5; Decl. of Jose Evora ("Evora Decl.") ¶ 2; Decl. of Janice Turano ("Turano Decl.") ¶ 13.

The record also demonstrates Plaintiffs and other members of the putative collective received different instructions about billing in Fieldglass.  Multiple members have testified that they were instructed by Citi and their employers to bill all work hours in Fieldglass.  Iyer Decl. ¶¶ 5-6; Sinha Decl. ¶¶ 5-6; Benitez Decl. ¶¶ 3-4; Evora Decl. ¶ 2; Decl. of Ziyuan Huang ("Huang Decl.") ¶¶ 4-5.  And Citi maintained written policies distributed to both its vendors and managers who interacted with vendor employees that required vendor employees to record all hours worked.  *See* Deposition of Donna Gruppuso ("Gruppuso Tr. ") attached as Ex. F to the Victor Decl. at 139:9-17; 140:10-21; 231:21-232:2; Victor Decl. Exs. L ("non-employees [must] ***record all time spent on work related activities***") (emphasis added); M; Gruppuso Decl. ¶¶ 9-11.

Plaintiffs' testimony reveals there is nothing "common" about what they were allegedly told about billing their time.  Whereas Young, the only Plaintiff assigned to Irving, Texas, testified that her "supervisor" instructed her not to enter more than 40 hours into Fieldglass, Young Tr. 42:2-10, a different Judge employee assigned to the same location was never told to enter 40 hours or less into Fieldglass.  Iyer Decl. ¶¶ 5-6.  Lewis-Gursky, who was employed by Judge in Tampa, Florida, testified that in multiple weeks her "supervisor" approved requests to bill more than 40 hours in Fieldglass.  Lewis-Gursky Tr. 35:14-16; 208:3-209:24.  In contrast, Marlow, who reported to the same "supervisor," testified she did not attempt to bill more than 40 hours in Fieldglass.  Marlow Tr. 40:4-40:8.  However, a different putative collective member assigned to the same Tampa location was never told to enter 40 hours or less into Fieldglass.  Benitez Decl. ¶¶ 4-5.  Chez, the only Plaintiff who worked as an AML Analyst and in Citi's Jersey City, New Jersey location, testified that his

"supervisor," Chris Mark, told him he could bill more than 40 hours in Fieldglass with prior approval (Chez Tr. 35:5-35:22; 36:5-36:7; 291:15-291:17);[6] a different Judge employee assigned to the same location was never told to enter 40 hours or less into Fieldglass. Sinha Decl. ¶¶ 4-6.

>    **B.    Plaintiffs and Others in the Putative Collective Had Different Experiences Regarding How They Were Paid By Each Vendor.**

Citi has no involvement in the compensation paid to Plaintiffs or any other member of the putative collective. Gruppuso Decl. ¶ 5; Turano Decl. ¶¶ 7-11; Decl. of Nicki McDaniel ("McDaniel Decl.") ¶¶ 4-5; Decl. of Roshni Patel ("Patel Decl.") ¶¶ 6-8; Decl. of Uma Sivasubramani ("Uma Decl.") ¶¶ 3-8. Instead, different vendors maintained varying time recording policies, payroll systems, and compensations arrangements that are wholly independent of Citi and Fieldglass. *Id.* For example, Young testified that SGA was solely responsible for paying her wages (Young Tr. 97:19-21), and that Citi knew nothing about her compensation. *Id.* at 44:5-10; 92:23-96:25; 147:13-150:12. Other Plaintiffs provided similar testimony. Chez Tr. 166:5-172:24; 174:-178:19; 185:10-20; 189:17-20; Rod. Tr. 56:10-56:15.

As a result of varying vendor policies/practices, Plaintiffs and other members of the putative collective had individualized experiences regarding how each recorded his/her time, how each was paid, and whether vendors were aware of any allegedly unpaid work. Whereas Judge employees are paid based on time they personally reported and verified in EaZyTyme,

---

[6] Mark confirmed that vendor employees were not prohibited from entering more than 40 hours into Fieldglass, but that Chez's project did not require working over 40 hours. Portions of Christopher Mark's deposition attached to Victor Decl. at Ex. G at 82:7-82:8 ("We never had enough work for anybody to need to work overtime").

Judge's independent payroll system, the lone SGA (Young) did not report her working hours to SGA and does not know how SGA determined her pay.[7]  *Compare* (Turano Decl. ¶¶ 7-11; Gursky Tr. 147:9-147:16; Marlow Tr. 43:11-43:19; Rod. at 28:25-29:3; Victor Decl. Ex. N) *with* Young Tr. 38:22-42:21; 44:5-10; 92:23-96:25; 147:13-150:12.   Although Young was paid overtime during multiple pay periods, Chez, Marlow, and Rodriguez never reported more than 40 hours in EaZyTyme.  *Compare* (Young Tr. 112:6-112:10; Lewis-Gursky Tr. 209:19-209:24) *with* Marlow Tr. 39:4-39:7.   Even Plaintiffs employed by Judge had individualized experiences regarding how they reported their time and were paid.   Lewis-Gursky testified that, like at least 130 other Judge employees during the relevant time period, she reported more than 40 hours in EaZyTyme in multiple weeks and was paid by Judge for all hours she entered.  *See* Turano Decl. ¶ 13; Lewis-Gursky Tr. 208:3-209:24. Marlow, on the other hand, testified that she never even attempted to enter more than 40 hours into EaZyTyme.  Marlow Tr. 39:4-39:7.

Other members of the putative collective were paid differently depending on, among other factors, their duties and the vendor(s) for which they worked.   For example, vendor Tata Consultancy Services Limited ("TCS"), paid hourly non-exempt workers assigned to Citi time-and-a-half for hours over 40 in a week.  Uma Decl. ¶ 8.   During the alleged collective period, ***Judge employees alone reported and were paid overtime in 1,858 work weeks***.  Turano Decl. ¶ 13.  Numerous other vendor employees received a fixed salary per

---

[7] It appears that Young did  not work under the "Hourly" billing template prior to March 2016, and is thus potentially excluded from the alleged collective.  *See* Gruppuso Decl. ¶ 13.  Young admits that she received overtime pay from SGA in the first quarter of 2016.  Pl. Mem. n.19.

week regardless of how many hours they worked or billed in Fieldglass (and are thus eligible for the administrative and other salary-based exemptions).  Uma Decl. ¶ 9.

Not a single Plaintiff alleges they were instructed by any vendor to underreport their work hours.  Pl. Mem. n.15.  Plaintiffs, in fact, repeatedly testified that they never told SGA or Judge they were not compensated for all hours worked and that neither vendor had reason even to suspect they were not paid for all hours.  Lewis-Gursky Tr. 151:5-12; Rod. Tr. 37:20-23; Marlow 41:18-44:25; Young Tr. 97:1-97:24.

### C.    Plaintiffs and Others in the Putative Collective Performed Different Jobs That Require an Individualized Assessment of Their Exempt Duties.

Differences among just the five Plaintiffs regarding their exempt duties are telling. Rodriguez, Young, Lewis-Gursky, and Marlow performed different duties that, analyzed individually, likely fall within the computer professional exemption, including modifying/testing computer hardware and software.[8]  In contrast, Chez worked as an AML Analyst  researching financial information on Google.  Chez. Tr. 62:6-63:24.

Plaintiffs offer no evidence regarding the duties of the over 700 individuals they seek to represent – and for good reason.[9]  They held more than 50 different positions, each requiring an individualized assessment of a variety of exempt duties, including: computer programming, hardware and software analysis, testing computer systems, creating online payment platforms, investigating compliance issues, and administrative functions.  Gruppuso

---

[8] *See* Rod. Tr. 85:24-86:7; Victor Decl. Ex. O; Young Tr. 125:10-126:25; Victor Decl. Ex. M; Victor Exs. P and Q; Gursky Tr. 165:3-165:13, 166:15-21, 167:2-167:4, 167:9-167:25, 178:2-179:16, 183:9-183:20, 194:23-195:5; Marlow Tr. at 114:2-115:11).

[9] Based on the time period alleged in the Amended Complaint there are nearly 1,500 members of the putative collective. Gruppuso Decl. ¶ 8.

Decl. ¶ 18; *see also* Apex Decl. ¶ 8.[10]  Even within the same job title, the duties are not consistent.  Gruppuso Decl. ¶¶ 20-25 (citing other examples).

**D.**  **Plaintiffs And Others in Putative Collective Had Different Experiences Regarding Whether or Not They Actually Worked Over 40 Hours A Week.**

The individualized differences in the assignments/duties among members of the putative collective lead to more individualized questions as to whether they worked more than 40 hours/week.  Young admits in many she months did not work more than 40 hours and could not identify the sporadic weeks she allegedly did so.  Young Tr. 68:22-69:13; 70:19-71:8; 170:16-172:13.  Rodriguez reported a unique working arrangement with his local "supervisor" whereby some weeks he worked under 40 hours and some weeks he worked a few hours over 40.  Rod. Tr. 26:24:27:3; 40:10-40:14.  Hours differed even within the same location, team, and position.  Chez claims he worked about 45 hours/week, but others on his team never worked more than 40.  Chez Tr. at 46:10-46:11. After reviewing "badge swipe" records showing when she entered/exited Citi's office, Lewis-Gursky changed her testimony and admitted to inaccurate statements to the Court about her hours.  *See* Gursky Tr. 252:11-254:18.

**E.**  **Plaintiffs and Others in the Putative Collective Had Different Experiences With Respect To Plaintiffs' Theory Of Joint Employment.**

Courts in the Eleventh Circuit use a multi-part, fact-specific "economic realities" test to determine whether a joint-employment relationship exists.  Pl. Mem. 15.  The results of

---

[10] A sampling of the job titles held by individuals in the alleged collective include: Application Programmer, Business Analyst, Systems Consultant, Information Security Analyst, Security Engineer, Production Control Shift Lead: App Support - Technical Specialist, Senior Operations & Maintenance Production Support Analyst Position, Project Manager, Web Developer, and Technical Writer.  Gruppuso Decl. ¶ 18.

this highly individualized inquiry vary depending on many factors, including where each vendor employee worked, who supervised each employee, which vendor employed each employee, and who furnished the equipment used by each.  The only common experience among the putative collective is that Citi did not control or pay their wages.  *See supra* 8-10.

For example, there are differences as to alleged control of vendor employees.   Some vendors assign a manager onsite at Citi locations to supervise their employees, who thus have little to no interaction with Citi.  Dep. of Tai Truong ("Truong Tr. "), Ex. H to the Victor Decl., at 43:16-44:3; Uma Decl. ¶ 6; Gruppuso Decl. ¶¶ 26-29.  Young's first "supervisor" at Citi worked 1,000 miles away; they never met and communicated about once a week.  Young Tr. 53:4-55:25; 56:8-57:6.  In contrast, other Plaintiffs claim that their alleged "supervisors" were in the same location and thus more involved in their work.  Chez Tr. 83:20-83:23. There are also differences regarding whether Citi owned the facility where vendor employees worked and/or the equipment they used.  Some worked at *vendor* sites or at home and thus did not have access to Citi's facilities or use its equipment.  *Compare Id*. 83:20-83:23 *with* Gruppuso Decl. ¶¶ 26-29.

## IV.    ARGUMENT

### A. This Court Has Rejected Plaintiffs' Rubber-Stamp Approach in Favor of a Meaningful Conditional Certification Standard That Promotes Judicial Efficiency.

#### 1.   *The Purpose of the FLSA's Certification Procedure is Judicial Efficiency.*

The touchstone for FLSA certification is judicial efficiency.  The Supreme Court has recognized that a primary purpose of allowing plaintiffs to proceed collectively is to promote the "efficient resolution in one proceeding of ***common issues of law and fact*** arising from the

same alleged [conduct]." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (emphasis added).

To ensure judicial resources are used efficiently, Plaintiffs cannot certify a collective unless they establish both that (1) "there are other employees who desire to opt in to the action[ ]," **and** (2) "the employees who desire to opt in are 'similarly situated.'" *Chalker v. Burlington Coat Factory of Florida, LLC*, No. 12-2755, 2013 WL 5954783, at *1 (M.D. Fla. Nov. 7, 2013). For the second element, Plaintiffs must establish both that (1) they are similarly situated to the putative collective, **and** (2) such collective is comprised of similarly situated employees. *See Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1258 (11th Cir. 2008). As Plaintiffs admit (Pl. Mem. 14), "[t]he key consideration is that to be 'similarly situated,' there must be substantial allegations that potential members were together the victims of a **single decision, policy, or plan**." *Hart v. JPMorgan Chase Bank, N.A.*, No. 12-00470, 2012 WL 6196035, at *5 (M.D. Fla. Dec. 12, 2012) (emphasis added); *see also Walker v. Jefferson Cty. Bd. of Educ.*, No. 13-524, 2016 WL 1117643, at *4 (N.D. Ala. Mar. 22, 2016). (denying conditional certification because plaintiff failed to identify "wide-spread or across-the-board FLSA violations"). Applying these standards, "federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where," like here, "**plaintiffs attempt to certify a broad class based only on the conclusory allegations of a few employees**." *Chalker*, 2013 WL 5954783, at *1.

> **2.      Because The Parties Conducted Extensive Discovery Regarding Conditional Certification, Plaintiffs Must Meet a Higher Burden.**

Plaintiffs try to salvage their collective by clinging to a "fairly lenient" standard that may apply if parties have conducted little or no discovery. *See Pl. Mem. 13 (citing Hipp v.*

*Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)).   But the "rationale for a more lenient standard" that "may apply at the preliminary stage of a case like *Hipp* disappears . . . once plaintiffs have had an *opportunity* to conduct discovery with respect to [a] defendant's policies and procedures."  *Walker*, 2016 WL 1117643, at *4 (denying motion to conditionally certify off-the-clock claims by applying "a more searching standard of review" to the factual differences between plaintiffs' work experiences); *Pickering v. Lorillard Tobacco Co.*, No. 10-633, 2012 WL 314691, at *8 (M.D. Ala. Jan. 30, 2012) ("[C]ourts [in the Eleventh Circuit] have departed from *Hipp's* more lenient standard where a period of discovery preceded the filing of the motion for conditional certification of a collective action.") (collecting cases).

This is the same reasoned approach applied by Judge Furman in denying conditional certification in *Korenblum* after three months of discovery.   *Id.,* 2016 WL 3945692 at *1. Like here, Plaintiffs' counsel in this action moved to certify a similar nationwide putative collective of all "IT workers" assigned to Citi under certain billing arrangements.  *Id.*  Also like here, they alleged that workers were not reporting or being paid for all hours.  *Id.*  Judge Furman held that "neither law nor logic supports rigidly applying the same standard of review at all points prior to discovery – particularly where, as here, discovery with respect to conditional certification has been completed."   *Id.* at *3 ("Were it otherwise, after all, what would be the point of discovery?").  The court thus applied a "modest 'plus'" standard of review in holding that the plaintiffs and members of the putative were not similarly situated because, as here, they worked in "differing job descriptions employed by forty different vendors at over seventy different worksites." *Id.* at *4.

Plaintiffs' claim that "limited discovery" has taken place is at best misleading.  Pl. Mem. 22.  They conducted *six months* of extensive discovery on conditional certification, the scope of which is detailed in multiple discovery motion filings.  *See* Dkts. 113, 135, 145. Unlike *Korenblum*, their discovery here included multiple fact witness depositions and expansive ESI discovery.  *Id.*[11]  Courts in the Eleventh Circuit repeatedly have applied a heightened review of the factual record where such discovery has occurred.  *See, e.g.*, *Walker*, 2016 WL 1117643, at *4; *Ide v. Neighborhood Rest. Partners, LLC*, 32 F. Supp. 3d 1285, 1291 (N.D. Ga. 2014) (applying "heightened standard of review" after 8 months of discovery); *Thedford v. Drive In of Evansville, Inc.,* No. 14-0390, 2014 WL 5520954, at *3 (N.D. Ala. Oct. 31, 2014) (same after 2.5 months of discovery and denying conditional certification); *Hilley v. Tacala, L.L.C.*, No. 12-2691, 2014 WL 1246364, at *14 (N.D. Ala. Mar. 24, 2014) (in nationwide "off-the-clock" case, denying conditional certification and applying "searching standard of review" because parties "were allowed significant time to conduct discovery on the issues for conditional certification").  This "prevent[s] the absurd result" of granting discovery on conditional certification "but subsequently imposing no incremental hurdle in determining whether Plaintiffs may send opt-in notices."  *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 827 (N.D. Ohio 2011).

---

[11] The facts and procedural posture of this case are much different than in *Bobbitt v. Broadband Interactive, Inc.*, No. 11-2855, 2012 WL 1898636, at *1 (M.D. Fla. May 23, 2012) (Buckley, J.).  Unlike Plaintiffs' unwieldy nationwide collective, the plaintiffs in *Bobbitt* sought to conditionally certify a far more modest collective of only *140 workers all employed in the same non-exempt position in Florida*.  *Id.* at *3.  And the plaintiffs submitted declarations from 14 other employees in support of their motion (*compared to none here*). Those declarations established that all members of the collective were similarly situated with respect to their job duties, work hours, specialized method of compensation (piece rate) and unpaid overtime.  *Id.* at *5.  Finally, the plaintiffs in *Bobbitt* moved for conditional certification *one day after the defendants were served with the complaint*, and thus discovery had not even commenced.  *See Bobbitt*, No. 11-2855, Dkts. 1, 9 and 11.

**3.   Even When a More "Lenient" Standard Applies, Courts Properly Address the Factual and Legal Issues Presented by Plaintiffs' Claims.**

This Court has instructed that conditional **"certification issues cannot be decided in a vacuum**" and that "it is entirely appropriate for the Court **to be cognizant of the factual and legal issues presented** by the case," even if applying a "lenient" *pre-discovery* standard. *West v. Verizon Commc'ns, Inc.*, No. 08-1325, 2009 WL 2957963, at *4 (M.D. Fla. Sept. 10, 2009) (denying conditional certification of off-the-clock claims); *Demauro*, 2011 WL 9191, at *3 (denying conditional certification because claims required "individualized inquires" into "fact intensive" issues).[12]

**B.   Conditional Certification Should Be Denied Because Plaintiffs Cannot Show Persons in the Putative Collective Are Similarly Situated.**

Regardless of the standard of review, which should be heightened given significant discovery, Plaintiffs' Motion falls woefully short of meeting their burden to show they and other members of the putative collective were are similarly situated and "together victims of a single decision, policy, or plan." *Hart*, 2012 WL 6196035, at *5.

**1.   There is No Common, Unlawful Policy.**

Plaintiffs do not allege that Citi controlled how more than 40 vendors paid their employees.   They merely claim that Citi's alleged **billing** practices may "incentivize" vendors to underpay their employees, Pl. Mem. 10, and that a series of attenuated decisions by local Citi personnel, over 40 different vendors, and the vendor employees themselves resulted in every member of the alleged collective uniformly being underpaid.   *Id.* ("this

---

[12] *See also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (vacating conditional certification because plaintiffs failed to present "common proof" addressing key factual questions of liability).

common scheme of underpayment . . . applied to all [workers] regardless of agency, location, or supervisor . . ."). Plaintiffs' speculative theory fails for two principal reasons. First, as the court in *Korenblum* found, Citi's billing arrangements with vendors are not unlawful under the FLSA. Second, the facts directly refute Plaintiffs' unsupported premise that the practices they allege uniformly applied to every member of the putative collective.

Even assuming, contrary to the facts (*see infra* at 22-24), that Citi's billing arrangements uniformly limited the number of hours **billed** by members of the putative collective, this is not unlawful. Judge Furman held just that when he rejected the exact same theory of liability that Plaintiffs attempt to rely on here. *See Korenblum*, 2016 WL 3945692, at *4. In *Korenblum*, **unlike this case**, there was no dispute that the plaintiffs worked for vendors (including Judge) with a somewhat different billing arrangement with Citi that uniformly designated some hours as "nonbillable." *Id.* Even so, the court soundly reasoned that it does not follow that each vendor "considered 'nonbillable' hours *vis-à -vis* Citi to be uncompensated hours *vis-à -vis* their [employees]. **In other words, Citi's common billing arrangement does not, in itself, 'violate[ ] the law.'**" *Id.* (emphasis added). The court further held that "the legality of Citi's billing scheme is cast into doubt only if, *at a minimum*, an IT vendor had a corresponding compensation scheme that treated . . . nonbillable work as uncompensated work. Plaintiffs must therefore offer some . . . evidence that a given IT vendor employed such a policy." *Id.* Here, Plaintiffs do not offer any evidence of a "corresponding scheme" for the two vendors that employed them, let alone for the more than 40 vendors employing individuals in the putative collective. *See supra* 6-10.

Like in *Korenblum*, the Eleventh Circuit has rejected Plaintiffs' theory that "creat[ing] economic conditions" that ***might*** lead to off-the-clock work is unlawful. *See Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1193-94 (11th Cir. 2009) (in FLSA "off-the-clock case," concluding that "policy of holding its employees to efficiency standards that were difficult to meet" during regular work hours did not prove employer "required any individual class member to work without pay"); *Hilley*, 2014 WL 1246364, at *14 (in FLSA off-the-clock case, holding that employer's compensation policy that rewarded managers for reducing overtime was not unlawful policy); *Beecher v. Steak N Shake Operations, Inc.,* 904 F. Supp. 2d 1289, 1298 (N.D. Ga. 2012) ("discourag[ing] managers from allowing overtime work" is "not enough glue to hold th[e] proposed class together").

The facts of this case further demonstrate why the billing practice alleged does not constitute an "unlawful policy" under the FLSA. First, Plaintiffs' theory does not account for the many exempt vendor employees who were paid a fixed weekly salary regardless of the number of hours they worked, making the number of hours billed particularly irrelevant to their compensation. *Supra* at 9-10. Second, Plaintiffs are entirely wrong to suggest that vendors could not realistically pay overtime to their workers if they were unable to bill Citi for those hours. Pl. Mem. 10. Even if a particular vendor employee did not bill Citi more than 40 hours, the vendor would still generate significant revenue overall even while paying overtime for the hours over 40. For example, as reflected in the chart below, Chez earned $44.00 per hour ($1,760 for 40 hours), but Judge billed his services to Citi at $59.40 per hour ($2,376 for 40 hours). Chez Tr. 171:16-171:18; Pl. Mem. Ex. 16. Thus, Judge generated $616 in revenue each week solely from his first 40 billable hours. Chez has alleged that he

worked on average 45 hours per week (but only billed 40).  Chez Tr. 367:17-25.  If true, this means that after Judge paid him five hours of overtime at $66 per hour ($44 x 1.5), *Judge still would have earned $286 in revenue <u>each week</u> due to the large surplus generated from the first 40 hours billed by Chez* ($616 – ($66 x 5 hours) = $286).[13]



Plaintiffs' simplistic analysis also fails to take into account that substantial revenue generated in weeks when vendor employees (like Young and Rodriguez) did not work more than 40 hours would further offset the cost of paying overtime to others.[14]

Next, even if the alleged 40-hour cap on billing hours were unlawful (which it is not), this alleged practice indisputably was not common.  The facts show that members of the

---

[13] Plaintiffs' suggestion that any policy aimed at limiting hours is unlawful fails to comprehend that the FLSA's express purpose is to reduce the number of overtime hours worked by employees.  *See Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009) (recognizing that FLSA's overtime requirements are intended to apply financial pressure to "spread employment to avoid the extra wage").

[14] The facts in *Stuven v. Texas de Brazil (Tampa) Corp.*, No. 12-1283, 2013 WL 610651, at *2 (M.D. Fla. Feb. 19, 2013) (Bucklew, J.), are in sharp contrast to Plaintiffs' wholly speculative theory. In *Stuven*, plaintiffs relied directly on the terms of the defendant's *own written uniform and pay policies*, which *indisputably applied to all plaintiffs*, to establish that defendant unlawfully deducted uniform costs from plaintiffs' wages.

putative collective (including Plaintiffs) billed more than 40 hours to Citi in **over 7,800 weeks (the equivalent of over 150 years) during Plaintiffs' proposed notice period in the Motion and over 15,000 weeks during the time period alleged in the Amended Complaint**. *See supra* at 6.   Consistent with this data, Plaintiffs and other members of the collective from varying vendors/locations also testified that they billed more than 40 hours in Fieldglass on numerous occasions throughout the relevant time period.  *See supra* at 6-7.   Further evidence of the absence of a common practice of unbilled hours is found in Ms. Gruppuso's testimony that she is not aware of Citi or its affiliates' employees ever requesting any vendor employee work off-the-clock.  Grupposo Decl. ¶ 11; Grupposo Tr. 241:16-242:6.

Finally, Plaintiffs' Motion also should be denied because they fail to connect the alleged billing practice to any common compensation practice.   That is, Plaintiffs do not demonstrate that more than 40 vendors maintained a "corresponding compensation scheme" to underpay each member of the putative collective.  *See Korenblum*, 2016 WL 3945692, at *4.   Plaintiffs do not **even allege** that any vendor instructed them or others not to record all hours worked for payroll purposes.  *See supra* 10.   And just as Plaintiffs and many putative collective action members **billed** more than 40 hours in thousands of weeks, they also were **paid** overtime in thousands of weeks.  *Supra* 6-8.   In sum, Plaintiffs have failed to identify a common, unlawful policy or practice and their Motion should be denied.

### 2. *Plaintiffs Have Failed to Show They Are Similarly Situated to Those They Seek to Represent.*

Plaintiffs allege in conclusory fashion "all [workers] regardless of agency, location, or supervisor" are similarly situated with respect to the non-existent policy alleged in their Motion.  Pl. Mem. 1.  However, Plaintiffs rely entirely on their inconsistent testimony about

their own claimed experiences and ***do not offer even a single declaration from any member of the putative collective***.  Plaintiffs' testimony does nothing to shed light on the experiences of others, as each Plaintiff testified they have no personal knowledge about the hours of work, billing practices, pay practices, or job duties that applied to other vendor employees or even to their own small teams.  *See e.g.*, Gursky Tr. 13:11-13:25; 26:2-26:6; 105:22-106:15; 271:7-271:17;  Marlow Tr. 20:6-20:11;  26:23-26:25;  27:22-27:25  (no knowledge about others' pay or work hours); Rod. Tr. 26:21-26:23; 29:15-29:17 (no knowledge of what any other Judge employee was told about time entry); Young Tr. 49:11-24; 57:7-22; (does not know how vendor employees assigned to her project were paid or hours they worked); Chez Tr. 193:7-198:8; 291:18-292:6 (does not know hours billed or worked by other vendor employees or what Judge employees were told about reporting payroll hours in EaZyTyme).

To summarize:  Plaintiffs purport to be "similarly situated" to a nationwide collective of between 700 and 1,500 individuals (0.3% to 0.7%) based on nothing more than their individualized experiences working for two of over 40 vendors (5%) at three of over 60 work locations (5%).  Gruppuso Decl. ¶ 16.  Plaintiffs also propose to send notice to every "AML Analyst" who worked under an Hourly billing arrangement, (Pl. Mem. 27), yet offer no declarations from anyone in that (or any other) role and the only AML Analyst to join this action expressly disclaimed performing nearly all AML duties.   Chez Tr. 92:16-94:17. Moreover, the only SGA employee, Young (as Johnson has settled her claims), is potentially excluded from the collective for all but a few weeks of the pertinent time period.  Gruppuso Decl. ¶ 13.  Such a limited, unrepresentative "sampling of employees does not support Plaintiff[s'] assertion of widespread violations resulting from a common policy or plan."

*West v. Border Foods, Inc.*, No. 05-2525, 2006 WL 1892527, at *6 (D. Minn. July 10, 2006) (denying notice where plaintiffs had evidence that 6 out of 240 employees might have been required to work off-the-clock); *Prince v. Cato Corp.*, No. 14-1708, 2015 WL 1040713, at *10 (N.D. Ala. Mar. 10, 2015) (testimony from 4 plaintiffs in 5 locations insufficient to show "similarly situated employees throughout the country").[15]  In contrast to Plaintiffs' absence of proof, the record confirms that Plaintiffs and the collective members are not similarly situated as to critical factual differences central to Plaintiffs' off-the-clock claims.

### a. Plaintiffs and Others in the Putative Collective Are Not Similarly Situated Regarding How They Billed Their Time to Citi.

Against the data showing that vendor employees billed more than 40 hours over 7,800 weeks, Plaintiffs offer only their individualized experiences that differ from multiple declarants from various vendors and locations who testified they were *never* instructed to bill fewer than 40 hours in Fieldglass.  *See supra* 6-7.  The stark differences between what Plaintiffs claim to have been told by just a few Citi managers over a period of years across the country (i.e., to not bill some hours) and what collective members were told by their employers and/or different Citi managers about billing time (i.e., to bill all hours) confirms they are not similarly situated on this fundamental issue.  *See, e.g.*, *Chalker*, 2013 WL 5954783, at *2 (denying conditional certification of nationwide collective action where plaintiffs' testimony established at most that individual managers requested off-the-clock work); *Hilley*, 2014 WL 1246364, at *20 (denying conditional certification after finding that

---

[15] *See also Thompson v. Speedway SuperAmerica LLC*, No. 08-1107, 2009 WL 130069, at *8 (D. Minn. Jan. 20, 2009) (sampling of under 1% of putative collective action members allegedly required to work "off-the-clock" fails to show "widespread FLSA violations"); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (2 out of 50 employees (4%) held insufficient to show a common policy or plan).

"sporadic and isolated incidents" of alleged unpaid time at a few locations did not show "systemic policy, practice, or pattern of unpaid time"); *Udo v. Lincare, Inc.,* No. 13-1899, 2014 WL 5354589, at *11-12 (M.D. Fla. Sept. 17, 2014).[16]

### b. *Plaintiffs and Others in the Putative Collective Are Not Similarly Situated Regarding How They Were Paid by Different Vendors.*

Plaintiffs have not and cannot offer common evidence about how they and others were paid.  In fact, Plaintiffs concede that determining this basic issue would require individualized discovery from every opt-in and/or their vendor employers.  Pl. Mem. 18.[17] And the facts already show that differences exist between Plaintiffs and other vendor employees as to whether, for example, they were paid overtime, paid on a salary basis, or received pay for hours worked over 40 (*supra* 8-10).  These differences, in turn, lead to highly individualized outcomes that preclude certification of Plaintiffs' proposed collective, which includes vendor employees regardless of whether they were paid overtime (and thus have no claims), paid on a salary basis (and thus may be subject to multiple exemptions), or received pay for hours over 40 in a week (and thus may be covered by the computer professional exemption).  As discussed in the next section, multiple potential overtime exemptions apply depending on each vendor employee's combination of duties and method of compensation.  The necessary individualized inquiries into each vendor employee's

---

[16] From the huge record in this case, Plaintiffs seize on one email, claiming that it "reflect[s]" Citi's practice of "capping" work hours under Citi's Hourly billing structure.  Pl. Mem. 8.  To the contrary, the e-mail concerns the transition of most employees working under a "Professional Day/Week" plans (which are different billing arrangements not at issue here), to the Hourly plan, and reaffirms – *consistent with existing policy and practice*, as explained in her deposition – that vendor employees under an "hourly billing structure" are required to report all hours worked into Fieldglass.  Gruppuso Decl. ¶¶ 13-14.

[17] Young, the only employee from SGA, testified that she has no knowledge about how SGA determined her compensation and thus Plaintiffs have no basis to claim she is similarly situated to anyone.  *Supra* 8-9.

compensation therefore precludes certification.  *See, e.g.*, *Thedford*, 2014 WL 5520954, at

*12 (denying conditional certification where some employees' receipt of overtime "strongly"

indicated "individualized inquiries into each plaintiff's claim would be necessary"); *Hart,*

2012 WL 6196035, at *5 (employees in off-the-clock case not similarly situated where

individual pay records showed "the best that can be said of the Plaintiffs' case is that some

[employees] were paid overtime and some were not").[18]

   c.   ***Plaintiffs and Others in the Putative Collective Are Not Similarly
        Situated Regarding Their Exempt Duties.***

   Plaintiffs do not deny that they performed different job duties; instead, they claim

these differences are "not material" to off-the-clock claims.  Pl. Mem. 21.  This unsupported

assertion is contrary even to their own experiences, which demonstrate that their different job

duties/assignments resulted in differences regarding whether they even needed to and did

work over 40 hours per week (*see supra* at 11) – and thus differences pertinent to whether

they have a colorable overtime claim.  Plaintiffs also overlook that courts have consistently

found that the highly technical duties performed by Plaintiffs and others in the alleged

collective (regularly paid above the required $27.63/hour, McDaniel Decl. ¶ 6; Evora Decl. ¶

1) fall within the computer exemption.  *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1231

(W.D. Mo. 2007) (denying conditional certification where whether employees were exempt

---

[18] Determining liability for each member of the proposed collective also would require individualized examination of whether Citi knew if that individual actually performed alleged unpaid work.  *See Contini v. United Trophy Mfg., Inc.*, No. 06-432, 2007 WL 1696030, at *3 (M.D. Fla. June 12, 2007) (finding no violation of FLSA where employer has no knowledge that employee working off-the-clock); *Hart*, 2012 WL 6196035, at *5 (denying conditional certification where evidence showed employer had no knowledge of off-the-clock work).  Plaintiffs' testimony confirms this will vary among workers.  *See supra* 8-9 (Young confirming Citi had no knowledge about how she was paid by SGA).

computer professionals required reviewing their individualized duties).[19]   Moreover, many vendor employees were paid a fixed weekly salary and classified by different vendors as exempt (*see supra* at 9-10).   The Court would need to conduct individualized inquiries to determine whether their duties met the administrative, executive, professional, or combination exemptions, *see supra* 10-11.   29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.200 *et seq.*; *see also Palacios v. Boehringer Ingelheim Pharm., Inc.*, No. 10-22398, 2011 WL 6794438, at *6 (S.D. Fla. Apr. 19, 2011).

### d.  *Plaintiffs And Others in Putative Collective Are Not Similarly Situated Regarding Whether or Not They Even Worked Over 40 Hours/Week*.

Every individual in the proposed collective must show that they worked more than 40 hours in a week in order to establish a claim.   Differences abound among Plaintiffs and other vendor employees on this threshold issue, *supra* 11, which is yet another reason to deny certification.  *See, e.g.*, *Walker*, 2016 WL 1117643, at *9; *West*, 2009 WL 2957963, at *6-7 (denying conditional certification where some plaintiffs worked less than 40 hours in some weeks and no collective proof about hours worked existed).   Plaintiffs in fact admit that determining the hours worked (and thus liability) for each opt-in requires a review of "a combination of electronic data (such as computer login time and badge swipe data)." Pl. Mem. 26.   This onerous, individualized discovery further confirms that the proposed collective is "utterly unmanageable." *Williams v. Accredited Home Lenders, Inc.*, No. 05-

---

[19] Plaintiffs' "off-the-clock" theory does not preclude the application of the computer exemption.  The Eleventh Circuit recently held in *Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264 (11th Cir. 2016), that well-compensated hourly employees like Plaintiffs continue to be covered by the computer exemption *even if they are not specifically paid for all hours worked in a week*.  *Id.* at 1272. *See also Mehrkar v. Schulmann*, No. 99-10974, 2001 WL 79901, at *7 (S.D.N.Y. Jan. 30, 2001) (dismissing plaintiff's FLSA claim after holding that "the fact that defendants allegedly did not pay plaintiff for four days does not mean that defendants failed to satisfy the salary basis test, thus voiding plaintiff's exempt status").

1681, 2006 WL 2085312, at *5 (N.D. Ga. July 25, 2006) (denying conditional certification in off-the-clock case where plaintiffs proposed to establish work hours through "computer activity reports, date and time stamped email, and phone records").

### e. *Plaintiffs And Others in Putative Collective Are Not Similarly Situated Regarding Plaintiffs' Theory of Joint Employment.*

Plaintiffs' claims also turn on whether Citi somehow jointly employed each of them and the putative collective action members under the Eleventh Circuit's eight-factor test.  Pl. Mem.  15.  *See also Crossley v. Armstrong Homes, Inc.*, No. 14-636, 2015 WL 2238347, at *2 (M.D. Fla. May 12, 2015) (determining joint-employment "is a fact-specific inquiry and must be determined on a case-by-case basis").  Plaintiffs primarily rely on their assertion that Citi's Technology Services Office ("TSO") "uniformly" controlled the onboarding of each vendor employee.  Pl. Mem. 4-6, 16.  But prior to 2016, the **TSO had no involvement with AML Analysts** (*e.g.*, Chez), so multiple pages in the Motion devoted to the TSO are irrelevant to that subset of the proposed collective.  Gruppuso Decl. ¶ 6.

As to the other collective members, *Korenblum* held that the same conclusory allegations concerning Citi's onboarding activities, alleged "common billing and timekeeping practices," and alleged control of vendor employees is insufficient common evidence of joint employment.  *Id.,* 2016 WL 3945692, at *7 (alleged evidence of "uniform" onboarding and time-entry policies "not enough to make Citi a joint employer of all its vendors' IT workers").  On the other hand, "material differences" among members of the putative collective that also persist here – for example, whether plaintiffs "worked from Citi locations and had access to Citi systems," or "worked elsewhere or lacked access to Citi's systems"– showed that the plaintiffs **were not similarly situated** on the fact-intensive issue of joint

employment. *Id.* at *7*; see also supra* 11-12; *Brooks v. A Rainaldi Plumbing, Inc.*, No. 06-631, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006) (denying conditional certification where plaintiffs failed to demonstrate sufficient evidence of joint employment); *Demauro*, 2011 WL 9191, at *3 (individualized inquires required by analogous "economic realities" test precluded conditional certification).  Finally, even if Plaintiffs had common proof of joint employment, which they do not, that alone does nothing to establish a common, unlawful policy or practice.  Absent an underlying wage/hour violation, for which there is no common evidence here, there would be nothing unlawful whatsoever about Citi jointly employing Plaintiffs or anyone else.

### f.   *Plaintiffs And Others in Putative Collective Are Not Similarly Situated Regarding Whether They Waived Their Right to Join This Action*.

Some vendors, including Judge and SGA, require their employees to enter into arbitration agreements and/or class/collective action waivers.  *See, e.g.,* Turano Decl. ¶ 15; Dkt. 98-3.  Other members of the collective (e.g., Marlow  & Rodriguez) entered into agreements with Citi to arbitrate any FLSA claims.  Victor Decl. Ex. R; Dkt. 98-2. These circumstances lead to more individualized inquiries requiring discovery from over 40 vendors.  *See Udo*, 2014 WL 5354589, at *12 (determining "whether putative opt-in plaintiffs have signed such a [collective action] waiver, and if so, whether it is valid" weighed against certifying collective action); *Hart*, 2012 WL 6196035, at *5.

### 3.   *Plaintiffs Have Failed to Show They Are Even Similarly Situated to Each Other.*

Putting aside the over 700 others shown above to be far from a cohesive group, Plaintiffs' testimony (*supra* at 6-12) shows they are not similarly situated even to each other

regarding: **how they were instructed to bill and did bill their time in Fieldglass**, *compare* Lewis-Gursky (received approval some weeks to bill over 40 hours) *with* Marlow (never tried to bill more than 40 hours); **how they were paid by SGA and Judge,** *compare* Young (paid overtime by SGA) *with* Marlow (never told Judge she worked over 40 hours); **the duties they performed**, *compare* Rodriguez (tested complex network routers) *with* Chez (researched transactions on Google); **the hours they worked,** *compare* Young (unpredictable work schedule with many weeks under 40 hours) *with* Rodriguez (work schedule consistently included many weeks under 40 hours); and **factors relevant to joint employment**, *compare* Young (worked from home and had minimal contact with supervisor located in different state), *with* Chez (worked from Citi location). These materially different experiences preclude certification. *See, e.g.*, *Brooks*, 2006 WL 3544737, at *2 (denying conditional certification: "If individuals who work for different companies, in different positions, under different compensation structures, were to be considered 'similar' under FLSA, it is difficult to ascertain a group of individuals that would be dissimilar.").

The many critical factual differences among the members of alleged collective detailed above demonstrate why Plaintiffs' reliance on *Jackson v. Fed. Nat'l Mortg. Ass'n*, No. 15-01411, 2016 WL 3098077, at *9 (N.D. Ga. Mar. 29, 2016), is so misplaced. In *Jackson*, the court certified a small collective of individuals who "worked the same job, in the same office, doing the same tasks" for only eight vendors. *Id.* at *9. The court distinguished those facts from cases that should ***not*** be conditionally certified because – ***like here*** – the collective "covers multiple offices or states, or employees with different job titles and duties." *Id. Jackson* is also distinguishable because the plaintiff sought certification ***just***

*weeks* after filing the complaint and ***before any discovery***.  *See id.*, No. 15-01411 at Dkt. 1 (April 28, 2015); Dkt. 31-1 (June 25, 2015).

**C.**      **Plaintiffs Have Failed To Show That Others Desire To Join This Action.**

Eighteen months after filing their action, and after their counsel solicited nearly 100 members of the putative collective, Plaintiffs support their request to send notice to over 700 individuals with no declarations from any putative collective action members (despite Plaintiffs Young and Johnson being on current assignments at Citi with ample access to others), and instead rely on the consent forms of four individuals who worked for only two vendors during the pertinent time period.  This is insufficient to demonstrate that others desire to join this action. *See Robinson v. Dolgencorp, Inc.*, No. 06-122, 2006 WL 3360944, at *5 (M.D. Fla. Nov. 13, 2006) (refusing to certify nationwide collective based on limited affidavits, unlike here where there are none); *see also Rodgers v. CVS Pharmacy, Inc.*, No. 05-77, 2006 WL 752831, at *1-6 (M.D. Fla. Mar. 23, 2006) (same).

**D.**      **If the Court Grants Conditional Certification At All, Which It Should Not, It Should Limit Proper Notice To Only Certain Judge and SGA Employees.**

Courts have limited conditional certification and notice to only those members of a putative collective action for which there is competent common evidence.  *See, e.g.*, *Monserrate v. Hartford Fire Ins. Co.*, No. 14-149, 2015 WL 4068388, at *6 (M.D. Fla. July 2, 2015) (declining to certify a national collective action estimated to be in excess of 1,000 employees and instead certifying a geographically limited collective class). Here, over 40 vendors employed over 700 workers, but Plaintiffs offer slim evidence only for five Judge and SGA employees at a few isolated locations.  *See supra* at 6-12.  If the Court were to permit notice at all (it should not), notice should be limited to certain Judge and SGA

employees working with the same alleged Citi "supervisors" in Irving, Texas; Tampa, Florida; and Jersey City, New Jersey.[20]  If the Court does permit notice, the parties should devise a joint notice and bring any disputes to the Court.  *See O'Jeda v. Viacom, Inc.*, No. 13-5658, 2014 WL 1344604, at *2 (S.D.N.Y. Apr. 4, 2014) (rejecting plaintiff's notice and directing parties to submit revised notice).  Plaintiffs' notice is improper for many reasons.[21]

## V.   CONCLUSION

A common ***billing*** practice for vendors is not evidence of a common unlawful ***compensation*** policy for the vendors' employees, but Plaintiffs do not even provide evidence of a common policy to not bill all hours.  Plaintiffs' own testimony refutes their allegation of a common illegal pay practice, and they have failed to present evidence suggesting any common relevant experience for over 700 putative collective action members.  Defendants respectfully requests that the Court deny Plaintiffs' Motion in its entirety.

---

[20] Any notice should further exclude parties to arbitration agreements.  *Supra*  27; *see, e.g.*, *Czopek v. TBC Retail Group, Inc.*, No. 14-675, 2015 WL 4716230, at *7 (M.D. Fla. Aug. 7, 2015) (excluding from collective action employees covered by arbitration agreement).

[21] The notice does not contain language on the first page regarding the Court's neutrality and thus creates an initial impression that the litigation is Court-endorsed.  *See e.g.*, *Knispel v. Chrysler Grp. LLC*, No. 11-11886, 2012 WL 553722, at *7 (E.D. Mich. Feb. 21, 2012).  To ensure contact information is not used for solicitations beyond Court-approved notice, a claims administrator should provide notice rather than Plaintiffs' counsel receiving contact information.  *See Sand v. Greenberg*, No. 08-7840, 2011 WL 1338196, at *4 (S.D.N.Y. Mar. 22, 2011).  The notice fails to advise the recipients that they may be required to travel to Florida to be deposed and/or for a trial, and that they may need to pay statutory costs if they lose.  *See Jancich v. Stonegate Mortg. Corp.*, No. 11-2602, 2012 WL 380287, at *3-4 (D. Kan. Feb. 6, 2012).  Plaintiffs propose mail and also intrusive email notice as well as a "reminder," but there should be at most a single notice by U.S. Mail to home addresses because multiple notices suggest judicial endorsement and pressure individuals to join.  *See Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012).  If Plaintiffs' counsel receive contact information at all, providing phone numbers and e-mails is unwarranted due to privacy concerns and because electronic notice can be altered, forwarded to others, or otherwise abused.

Date:  November 4, 2016  **MORGAN, LEWIS & BOCKIUS LLP**

By:  /s/ Justin K. Victor _____

Carol A. Field
Florida Bar No. 987166
5300 Southeast Financial Center
200 S. Biscayne Blvd.
Miami, FL 33131-2339
Tel:  305.415-3000
Fax:  877.432.9652
E-Mail:  carol.field@morganlewis.com

Sam S. Shaulson (*pro hac vice*)
Jason D. Burns (*pro hac vice*)
101 Park Avenue
New York, NY  10178
Tel:  (212) 309-6000
Email:  sam.shaulson@morganlewis.com
Email:  jason.burns@morganlewis.com

Michael J. Puma (*pro hac vice*)
Justin K. Victor (*pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Tel:  (215) 963-5000
Email:  michael.puma@morganlewis.com
Email:  justin.victor@morganlewis.com

*Attorneys for Defendants*

- 1 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 4, 2016, I electronically filed this Memorandum of Law in Opposition To Plaintiffs' Motion For Court-Authorized Notice Pursuant To 29 U.S.C. § 216(b), the Declaration of Justin K. Victor, including Exhibits A through R, the Declarations of Donna Gruppuso, Janice Turano, Uma Sivasubramani, Nicki McDaniel, Roshni Patel, Santosh Iyer, Ranjeet Sinha, Jose Evora, Yadira Benitez, and Zyiyuan Huang with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing documents are being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

## SERVICE LIST

| | |
|---|---|
| Adam T. Klein, Esq.<br>Christopher McNerney, Esq.<br>Michael J. Scimone, Esq.<br>Molly Anne Brooks, Esq.<br>Olivia J. Quinto-Reyes, Esq.<br>Outten & Golden, LLP<br>3 Park Ave, Floor 29<br>New York, NY  10016-5902 | David J. Cohen, Esq.<br>Stephan Zouras, LLP<br>604 Spruce Street<br>Philadelphia, PA  19106 |
| Catherine T. Mitchell, Esq.<br>James B. Zouras, Esq.<br>Ryan F. Stephan, Esq.<br>Teresa Becvar, Esq.<br>205 N. Michigan Ave, Suite 2560<br>Chicago, IL  60601 | |
| Loren Bolno Donnell, Esq.<br>Sam Jones Smith, Esq.<br>Burr & Smith, LLP<br>111 2nd Avenue NE Suite 1100<br>St. Petersburg, FL  33701-34734 | |

_s/ Justin K Victor_
Justin K. Victor