UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAROLINE ALANA LEWIS-GURSKY,
and RUBEN CHEZ, on behalf of
themselves and all others similarly situated,

    Plaintiffs,        Case No.: 8:15-cv-2887-T-24-MAP

vs.

CITIGROUP, INC., and JUDGE
TECHNICAL SERVICES, INC.,

    Defendants.
_____/

# ORDER

This cause comes before the Court on Plaintiffs' Corrected Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (the "Motion for Court-Authorized Notice") (Doc. 170) and Plaintiffs' Motion to Strike Declarations of Undisclosed Witnesses and Testimony Regarding Unproduced Documents (the "Motion to Strike") (Doc. 186). Defendants oppose both Motions. (Docs. 173 & 190). Upon review, the Motion for Court-Authorized Notice is **DENIED,** and the Motion to Strike is **DENIED AS MOOT**.[1]

**I. Background**

Plaintiffs Caroline Alana Lewis-Gursky ("Gursky") and Ruben Chez ("Chez") bring this collective action complaint against Citigroup, Inc. ("Citi") and Judge Technical Services, Inc. ("Judge Technical") alleging that Citi and Judge Technical violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), by failing to pay overtime compensation to hourly paid IT

---

[1] Plaintiffs also moved this Court for leave to file a reply to Defendants' response to the Motion for Court-Authorized Notice. (Doc. 185). The Court finds a reply unnecessary and therefore denies this request.

employees. (Docs. 1 & 26).[2] This case, initially filed in the Southern District of New York, was transferred to this Court on December 18, 2015. (Doc. 41). The named Plaintiffs are former employees of Judge Technical, an information/technology vendor that provided Hourly Technology Workers ("HTWs") to Citi and/or Citi affiliates. There are also currently three opt-in plaintiffs—David Rodriguez ("Rodriguez"), Nicole Young ("Young") and Jill Marlow ("Marlow") (Docs. 3, 99 & 125).[3] The named plaintiffs and opt-in plaintiffs are referred to collectively herein as "Plaintiffs."

Plaintiffs are alleged to have been employed at various positions with Citi through four different staffing agencies at various Citi locations across the country. Specifically, Gursky and Marlow worked on Citi's Global Voice Integration team in Tampa, Florida through Judge Technical and Axelon Services Corporation. Chez worked as an Anti-Money Laundering Quality Control Analyst in Jersey City, New Jersey through Judge Technical. Rodriguez was employed as a Network Analyst through Judge Technical in Irving, Texas. Young was a Business Analyst in Irving, Texas employed through Software Guidance & Assistance, Inc. and Fintech, Inc.

In their Amended Complaint, Plaintiffs allege that they and other similarly situated HTWs were jointly employed by Citi and various staffing agencies, and they seek to hold Citi liable as the joint employer for the HTWs' unpaid overtime claims under the FLSA. Plaintiffs claim that the HTWs were subjected to a common scheme of underpayment that applied to all HTWs, regardless of staffing agency, location or supervisor, in which Citi required the HTWs to work more than 40 hours per week but prohibited the HTWs from entering more than 40 hours in Fieldglass, a program used by Citi to bill third-party vendors for work provided by vendor

---

[2] Plaintiff Chez, who consented to become a party plaintiff on June 23, 2015 (Doc. 21) and was added as a party plaintiff in the Amended Complaint, also purports to represent a Federal Rule of Civil Procedure 23 class with respect to a New Jersey state wage and hour law claim. (Doc. 26).
[3] A fourth opt-in plaintiff, Carolyn Johnson, settled her claims and has been dismissed from this action. (Doc. 194).

employees. Plaintiffs allege that the staffing agencies in turn limited the HTWs' pay to 40 hours per week, leading to uncompensated overtime.

Pursuant to the parties' request, the Court ordered bifurcated discovery in this matter on March 28, 2016. (Doc. 94). Phase One Discovery, which was to be completed by October 7, 2016, was limited to Plaintiffs' individual claims, the claims of any opt-in Plaintiffs to the extent that such claims are not compelled to arbitration and/or stayed, and collective action certification issues. Phase Two Discovery would not commence until after the Court resolved Plaintiffs' motion for conditional certification. The parties engaged in substantial motion practice regarding the scope of Phase One Discovery.

After six months of discovery regarding, *inter alia*, collective action certification issues, Plaintiffs filed their Motion for Court-Authorized Notice seeking conditional certification of the following collective:

> Plaintiffs seek to provide notice to [Hourly Technology Workers ("HTWs"),] defined as workers who were supplied to Citi through staffing agencies (including but not limited to Judge) and paid on an hourly basis. The HTWs in the proposed collective were all classified under the "Hourly" time template in Fieldglass, and either (1) categorized under the "TS200" or "TS300" "commodity codes" in Fieldglass (as "technology resources" whose employment with Citi was managed through Citi's Technology Staffing Office;) or (2) were working as AML Analysts. The proposed collective encompasses HTWs who worked for Citi between three years prior to the date of the Court's decision on this Motion and March 1, 2016.

(Doc. 170, pp. 4–5) (footnotes omitted).[4] According to Defendants, this collective encompasses over 700 employees who worked for over 40 different third-party vendors at over 60 Citi locations across the country. (Decl. of Donna Gruppuso, Doc. 175, ¶ 16).

---

[4] This collective differs from that proposed in the Amended Complaint. In the Amended Complaint, Plaintiffs proposed the following collective: "All individuals who currently work, or have worked, for Defendant, Citi, as non-

3

**II. Motion for Court-Authorized Notice**

    **A. Legal Standard**

The FLSA expressly permits collective actions against employers accused of violating the FLSA's mandatory overtime provisions. *See* 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.") Any potential plaintiff must affirmatively opt into the collective action. *Id.*

Pursuant to Section 216(b), certification of collective actions in FLSA cases is based on a theory of judicial economy by which "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" activity. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989).[5] The decision to conditionally certify a collective FLSA action lies within the sound discretion of the district court. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). The Eleventh Circuit has made clear that before exercising that discretion and facilitating notice, a "district court should satisfy itself that there are other employees who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (*quoting Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)).

In *Hipp*, the Eleventh Circuit "suggest[ed]" a "two-tiered approach to certification of § 216(b) opt-in classes" to assist district courts in resolving the similarly situated inquiry. *Hipp*, 252 F.3d at 1219.

---

exempt, hourly paid, IT employees, but were classified by Citi as contractors, during the applicable statute of limitations period and performed overtime work without receiving all wages owed for such work." (Doc. 26, ¶ 57).

[5] *Hoffman-La Roche* involved an ADEA collective action, brought as a § 216(b) action pursuant to the ADEA's express statutory authority of § 216(b) of the FLSA.

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant[,] usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

*Id.* at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)).[1]

"Similarly situated" is not defined in the FLSA, and the Eleventh Circuit has not "adopted a precise definition of the term." *Morgan*, 551 F.3d at 1259–60. In determining whether employees are similarly situated, a court must consider whether the employees are similar with respect to their job requirements and pay provisions. *Dybach*, 942 F.2d at 1567–68; *Hart v. JPMorgan Chase Bank, N.A.*, 8:12-cv-00470-T-27TBM, 2012 WL 6196035, at *5 (M.D. Fla. Dec. 12, 2012). The Eleventh Circuit has instructed that the plaintiff need demonstrate only that his position is "similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217 (*quoting Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). At the same time,

---

[1]*Mooney* was overruled in part on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

however, "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of duties and pay provisions." *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002), *cited with approval in Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) *cert. denied*, 553 U.S. 1093 (2008). "A plaintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees." *Morgan*, 551 F.3d at 1260 (citations omitted). While the plaintiff's "burden at the notice stage is not heavy, it is not 'invisible.'" *Hart*, 2012 WL 6196035, at *4 (citations omitted).

The parties devote a substantial portion of their briefing to whether the Court should apply a more searching standard than that articulated in *Hipp*. Defendants argue that Plaintiffs must meet a higher standard than the "fairly lenient" *Hipp* standard in this case because the parties sought, and the Court approved, a bifurcated discovery schedule that allowed six months of discovery on the issue of certification of a collective action. (Doc. 173, p. 13–16). Plaintiffs disagree, relying heavily on the "fairly lenient" *Hipp* burden in arguing for collective certification.

The Court finds the Defendants' argument persuasive and supported by the decisional law of the district courts in this Circuit. Although district courts generally follow the two-tiered framework, the Eleventh Circuit has noted that "[n]othing in our circuit precedent . . . requires district courts to utilize this approach." *Hipp*, 252 F.3d at 1219. Rather, "[t]he decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court." *Id.* Where a period of discovery precedes the filing of the motion for conditional certification, the rationale for a more lenient standard at the preliminary stage of a case disappears. *See Udo v. Lincare*, No. 8:13-cv-1899-T-23TGW, 2014 WL 5354589, *10 (M.D. Fla. Sept. 17, 2014) (adopting report and recommendation finding that

the first stage analysis recommended in *Hipp* seemed inapt when the case had been ongoing for seven months and discovery had been conducted); *Walker v. Jefferson*, Case No. 2:130CV0524-RDP, 2016 WL 1117643, at *4 (N.D. Ala. Mar. 22, 2016) (holding that when an FLSA case is in a more advanced posture than envisioned in *Hipp*, a more searching standard of review is appropriate); *Holmes v. Quest Diagnostics, Inc.*, No. 11-80567-Civ-WILLIAMS, 2012 WL 12876965, at *3 (S.D. Fla. June 14, 2012) (applying more careful consideration to the parties' evidence for motion for conditional certification when discovery had been ongoing for six months); *Ledbetter v. Pruitt Corp.*, No. 05-cv-329 (CAR), 2007 WL 496451, at *2 (M.D. Ga. Feb. 12, 2007) (finding that, because the motion for certification was filed after the close of discovery, the case was "in a different procedural posture than that envisioned by *Hipp*" and "therefore a more searching standard of review [was] appropriate").

*Hipp* envisions a certification process that begins with the notice stage where the court makes a decision based on the pleadings and affidavits, prior to discover, and therefore because the court has minimal evidence, it applies a lenient standard. *Pickering* v. *Lorillard Tobacco Co., Inc.*, No. 2:10-cv-633-WKW, 2012 WL 314691, *9 (M.D. Ala. Jan. 20, 2012). However, "[w]hen the parties have had access to discovery and the opportunity to amass evidence in support of the complaint's collective action allegations, the protection provided by *Hipp's* first stage review is no longer needed." *Id.* Here, pursuant to the Parties' joint request, six months of discovery was conducted regarding, *inter alia*, collective action certification issues. It makes little sense to allow significant time to conduct discovery on the conditional certification question and then to hold Plaintiff to the "fairly lenient," pre-discovery *Hipp* standard. Therefore, a more rigorous standard than that called for by *Hipp* is appropriate.

### B. Analysis

Plaintiffs' proposed class includes "'HTWs,' defined as workers who were supplied to Citi through staffing agencies[,] . . . paid on an hourly basis[,] . . . classified under the 'Hourly' time template in Fieldglass, and either (1) categorized under the 'TS200' or 'TS300' 'commodity codes' in Fieldglass . . . or (2) were working as AML Analysts." (Doc. 170, pp. 11–12).

Plaintiffs assert that despite working at different Citi facilities and business units, under different Citi managers and vendors, the proposed collective is similarly situated because the HTWs were subject to the same common billing arrangement, which incentivized the vendors to underpay the HTWs. For collective certification under the FLSA, a "key consideration is that to be similarly situated, there must be substantial allegations that potential members were together the victims of a single decision, policy, or plan" that violates the FLSA. *Hart*, 2012 WL 6196035, at *5 (citation omitted) (internal quotation marks omitted). Plaintiffs argue that they and other HTWs under Citi's "Hourly" time template are similarly situated in that they were subjected to a common scheme of underpayment that applied to all HTWs, regardless of vendor, location or supervisor. (Doc. 170, pp. 8–9). Specifically, Plaintiffs allege that Citi maintained a policy of capping the number of hours of work that HTWs were permitted to bill per week in Fieldglass to 40 hours (regardless of whether the HTW worked more than 40 hours in a week), which resulted in unpaid overtime because it "incentivized" vendors to pay the HTWs for only the time that was billed, as opposed to time actually worked. It is Plaintiffs' position that they have presented enough evidence to show that Citi's policy of capping the number of hours reported in Fieldglass was a common scheme in violation of the FLSA sufficient to support collective certification.

Defendants respond that even if Citi uniformly prohibited vendor employees from billing more than 40 hours in a week, Plaintiffs have failed to show this arrangement resulted in the

8

vendors underpaying the employees. Thus, according to Defendants, there is no evidence of a common policy between Citi and the vendors tying hours billed in Fieldglass to hours compensated by the vendors. Defendants cite to *Korenblum v. Citigroup, Inc.*, No. 15-CV-3383, 2016 WL 3945692, at *4 (S.D.N.Y. July 19, 2016), a similar case in which a court in the Southern District of New York denied FLSA certification where "the legality of Citi's billing scheme is cast into doubt only if, at a minimum, an IT vendor has a corresponding compensation scheme that treated the Professional Plan's nonbillable work as uncompensated work."

The Court concludes that even if such a common scheme existed, certification is inappropriate in this case because the diversity of the proposed class would lead to individual inquiries that would "eviscerate[] all notions of judicial economy that would otherwise be served by conditional class certification." *Demauro v. Limo, Inc.*, No. 8:10-cv-413-T-33AEP, 2011 WL 9191, at *4 (M.D. Fla. Jan. 3, 2011); *see also Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) (denying class certification in an FLSA case and stating "the court is not satisfied that conditionally certifying a nationwide collective action, or even a regional collective action, will partake of the economy of scale envisioned by the FLSA collective action procedure"). While Plaintiffs need not show they held identical positions, they must show that they and the putative class held *similar* positions. *See Hipp*, 252 F.3d at 1217.

Here, Plaintiffs have failed to satisfy that burden. The proposed collective includes a diverse group of HTWs from over 40 vendors with different job titles and different job duties, who worked for multiple Citi affiliates at over 60 different Citi locations nationwide. (Decl. of Donna Gruppuso, pp. 5–8). Collective certification of a group this diverse would result in individualized inquires that "would contravene the basic theory of judicial economy upon which the certification

9

of collective actions is based." *West v. Verizon Commc'ns, Inc.*, No. 8:08-cv-1325-T-33MAP, 2009 WL 2957963, at *7 (M.D. Fla. Sept. 10, 2009).

First, as pointed out by Plaintiffs in their Motion for Court-Authorized Notice, a crucial issue in this case will be whether Citi was Plaintiffs' joint-employer. The Eleventh Circuit has articulated eight factors a court should consider in determining whether a joint-employment relationship exists: (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire, or modify the workers' employment conditions; (4) the power to determine the workers' pay rates or methods of payment; (5) the preparation of payroll and payment of workers' wages; (6) the ownership of the facilities where the work occurred; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities. *See Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1176 (11th Cir. 2012). Importantly, whether a joint-employment relationship exists is a fact-specific inquiry that must be undertaken on a case-by-case basis. *See Crossley v. Armstrong Homes, Inc.*, No. 5:14-cv-636-Oc-30PRL, 2015 WL 2238347, at *2 (M.D. Fla. May 12, 2015).

Plaintiffs argue that because they plausibly allege that the HTWs within the proposed collective are jointly employed by Citi, regardless of the staffing agency, collective notice is appropriate. However, aside from making conclusory allegations, Plaintiffs have not shown that the members of the proposed collective are similar in the application of the joint-employment factors. While mindful that courts generally reserve consideration of the joint employment factors until the final, stage-two determination, *see, e.g.*, *Nadreau v. Lush Cosmetics, LLC*, No: 2:10-CV-298-FtM-36SPC, 2011 WL 13143146, at *3 (M.D. Fla. Jan. 28, 2011), in this case the Court concludes that material differences between the members of the proposed collective would lead to

unmanageable individualized inquiries regarding joint employment if a collective were to be certified.

The proposed collective includes HTWs from over 40 vendors who worked for multiple Citi affiliates at over 60 different Citi locations nationwide. (Decl. of Donna Gruppuso, pp. 5–8). Based on the materials filed in support of and in opposition to the Motion for Court Authorized Notice, the Court is convinced that the application of the joint-employment factors to the proposed collective would result in unwieldy, plaintiff-specific inquiries that would run counter to the principles of judicial economy upon which collective certification is based. For example, the HTWs in the proposed collective differ regarding their job duties, whether they worked from Citi locations, whether they used Citi's equipment to perform their job duties, and the level of interaction between the HTWs and Citi employees. (*E.g.*, Decl. of Donna Gruppuso, ¶¶ 27–28 ("[S]ome vendor employees provide services to Citi affiliates solely from their employer's facilities and do not have access to Citi affiliates' systems. Other vendor employees are not provided building access to Citi facilities or primarily work at home, some vendor employees do not use Citi affiliates' equipment, and some vendor employees do not have a Citi email address during their assignment. . . . [T]he level of interaction, if any, between Citi affiliates' employees and vendor employees varies from assignment to assignment."); Mark Depo., Doc. 171-12, 44:2–23[6] (indicating that Citi provided compliance officers with Citi computers and software to perform their work); Young Dep., Doc. 174-5, 53:1–53:18 (indicating that Young's direct supervisor did not work in the same location as Young and that the two never met in person); Tai Truong Depo., Doc. 174-8, 43:16–44:3 (testifying that some vendors had their own managers at Citi locations on a regular basis to manage the vendor employees). Based on this diversity, the Court is convinced

---

[6] The page numbers used herein for deposition transcripts refer to the page numbers of the depositions themselves, not those assigned by the CM/ECF system.

that individualized analyses are needed to determine whether members of the proposed collective are joint employees of Citi. *Cf. Jackson v. Fed. Nat'l Mortg. Assoc.*, 181 F. Supp. 3d 1044, 1062 (M.D. Ga. 2016) (conditionally certifying collective class of employees supplied by a staffing agency where the evidence suggested that the "class members all worked the same job, doing the same work, with the same duties, at the same office, under the same Fannie Mae supervision, and subject to the same loan review production quotas that allegedly required more than 40 hours of work per week"). Accordingly, class certification of Plaintiffs' proposed class is improper. *See Demauro*, 2011 WL 9191, at *3.

Additionally, the substantial diversity within the proposed collective would lead to plaintiff-specific inquiries as to whether or not an individual was exempt from the FLSA based on his or her job duties. Plaintiffs argue that while the HTWs performed different job duties, this fact is immaterial to Plaintiffs' off-the-clock claims. To the contrary, Plaintiffs' individual job duties are material to determine whether Plaintiffs are subject to the FLSA's computer professionals exemption or any other exemptions. *See* 29 U.S.C. § 213(a)(17); 29 C.F.R. §§ 541.200–541.402. Under the FLSA, the overtime compensation requirements do not apply to:

> (17) any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is—
>
> > (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
> >
> > (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

> (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
>
> (D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills, and
>
>> who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $ 27.63 an hour . . . .

29 U.S.C. § 213(a)(17). Due to the substantial variation in job duties in the proposed collective, conditional certification would require the Court to entertain myriad individualized analyses of whether the individuals were exempt under this exemption in contravention of the principles of judicial economy supporting collective certification. *See West*, 2009 WL 2957963, at *7.

Specifically, Donna Gruppuso's Declaration demonstrates that "Hourly" vendor employees categorized under the "TS200" or "TS300" codes in Fieldglass held a wide variety of job titles ranging from Application Programmer and Systems Engineer to Business Analyst and Technical Writer. (Decl. of Donna Gruppuso, at p. 6). Likewise, the job duties and tasks of those in the proposed collective are diverse, ranging from computer programming to data analysis. (*Id.* at pp. 4–6). This diversity is present even among the current Plaintiffs, themselves. For example, Plaintiff Rodriguez testified in his deposition that his job duties included modifying and testing computer hardware, duties which may fall within the computer professionals exemption. (Doc. 174-4, pp. 85–86). To the contrary, Plaintiff Chez testified that his job duties were to research monetary transactions, duties which arguably do not fall within the exemption. (Doc. 174-2, pp. 62–63). The job duties of each member of the collective would need to be individually analyzed in order to determine whether the computer professional exemption applies. The need for these individualized, fact-specific inquiries renders conditional certification in this proceeding

unwarranted. *See Kelley v. Taxprep1, Inc.*, No. 5:13-cv-451-Oc-22PRL, 2014 WL 10248251, at *2 (M.D. Fla. April 2, 2014) (denying collective certification based in part on necessity of plaintiff-specific inquiries as to whether the FLSA executive exemption applied); *Hart*, 2012 WL 6196035, at *5 (denying collective certification when plaintiff-specific inquiries would be necessary as to numerous issues including, *inter alia*, whether any "off-the-clock" work fell within the *de minimis* exception to the FLSA).

In sum, the necessity of these individualized-inquiries leads the Court to the conclusion that the proposed collective is not composed of similarly-situated individuals. The Court emphasizes that it is not weighing the evidence or accepting the substance of one parties' evidence over that of another. Instead, the substantial evidence that has been presented to the Court indicates that collective certification of Plaintiffs' proposed class would "eviscerate[] all notions of judicial economy that would otherwise be served by conditional class certification." *Demauro*, 2011 WL 9191, at *4. Plaintiffs' proposed collective is simply too diverse to warrant collective certification.[7] Accordingly, the Court denies Plaintiffs' Motion for Court-Authorized Notice.

### III. Motion to Strike

Plaintiffs have also moved pursuant to Federal Rule of Civil Procedure 37(c)(1) to strike declaration testimony of witnesses allegedly not previously disclosed by Defendants and declaration testimony that relies on documents that were allegedly not produced during discovery. (Doc. 186). Specifically, Plaintiffs move to strike the following declarations: (1) four declarations by employees of third-party vendors (Docs. 176, 177, 178 & 179); five declarations of Plaintiffs' proposed collective (Docs. 180, 181, 182, 183 & 184); and paragraph 8 of the Declaration of Donna

---

[7] Because Plaintiffs failed to show that the proposed collective is composed of similarly-situated individuals, the Court need not decide whether the four consents-to-join which have been filed in this action since it was initiated on April 30, 2015 satisfy the opt-in requirement.

Gruppuso (Doc. 175). These declarations were not necessary to the Court's decision to deny the Motion for Conditional Certification, and the Court did not rely upon them in ruling on the motion. Accordingly, Plaintiffs' Motion to Strike is denied as moot.

## IV. Conclusion

Based on the foregoing, Plaintiffs have not shown a reasonable basis for their claim that the members of the proposed collective are similarly situated based on their job requirements and pay provisions. The proposed collective encompasses employees from different staffing agencies located in multiple states and offices, with materially different job titles and duties. Therefore, the Court will exercise its discretion and deny certification of a collective action. *See Hipp*, 252 F.3d at 1217. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Corrected Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (Doc. 170) is **DENIED**. The parties are directed to file a supplemental case management report that addresses deadlines for the rest of this case by **April 3, 2017**. Additionally, if the opt-in Plaintiffs wish to participate in this matter further, Plaintiffs are directed to file a motion to amend the complaint, which amendment shall be limited solely to adding the opt-in Plaintiffs as named plaintiffs, by **March 27, 2017**.

Further, Plaintiffs' Motion for Leave to File a Reply in Support of its Motion for Court-Authorized Notice (Doc. 185) is **DENIED**, and Plaintiffs' Motion to Strike Declarations of Undisclosed Witnesses and Testimony Regarding Unproduced Documents (Doc. 186) is **DENIED AS MOOT**.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of March, 2017.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge